1          UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF TEXAS
2                HOUSTON DIVISION

3   UNITED STATES OF AMERICA       .
                                   . H-12-CR-272
4        vs.                       . HOUSTON, TEXAS
                                   . JANUARY 18, 2013
5                                  . 1:47 P.M.
    TERRY GLENN SILLERS,           .
6   TERRY ROSS BLAKE, LARRY MAX    .
    BRYAN, JAMES LAWRENCE          .
7   BURNS, REBECCA JOHNSON         .
    CROPP, BEN CHRISTIAN DILLON,.
8   RUSTY EUGENE DUKE, KELLY RAY.
    ELLEY, DESTINY NICOLE          .
9   FEATHERS, CHAD RAY FOLMSBEE,.
    SAMANTHA DEANN GOLDMAN,        .
10  KENNETH MICHAEL HANCOCK,       .
    DUSTIN LEE HARRIS, BENJAMIN .
11  TROY JOHNSON, CLAY JARRAD      .
    KIRKLAND, MICHAEL RICHARD      .
12  LAMPHERE, JAMIE GRANT          .
    LOVEALL, WILLIAM DAVID         .
13  MAYNARD, SHANE GAIL McNIEL, .
    JAMES MARSHALL MELDRUM,GLEN .
14  RAY MILLICAN, JR.,             .
    CHRISTOPHER JAMES MORRIS,      .
15  STEPHEN TOBIN MULLEN, JUSTIN.
    CHRISTOPHER NORTHRUP, RONALD.
16  LEE PRINCE, CHARLES LEE        .
    ROBERTS, DAVID ORLANDO         .
17  ROBERTS, BILLY DON SEAY,       .
    JAMES ERIK SHARRON, SAMMY      .
18  KEITH SHIPMAN, BRIAN LEE       .
    THOMAS, FREDRICK MICHAL        .
19  VILLARREAL, TAMMY MELISSA      .
    WALL, BILLY FRANK              .
20  WEATHERRED, AND STEVEN         .
    WORTHEY                        .
21  . . . . . . . . . . . . . . .

22

23         TRANSCRIPT OF SCHEDULING CONFERENCE
           BEFORE THE HONORABLE SIM LAKE
24           UNITED STATES DISTRICT JUDGE

25

*THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE UNDER THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS AUTHORIZED BY COURT ORDER. UNAUTHORIZED REPRODUCTION WILL RESULT IN AN ASSESSMENT AGAINST COUNSEL FOR THE COST OF AN ORIGINAL AND ONE COPY AT THE OFFICIAL RATE.*
*General Order 94-15, United States District Court, Southern District of Texas.*

A P P E A R A N C E S:

FOR THE GOVERNMENT:

    Jay Hileman
    Office of the US Attorney
    1000 Louisiana
    Suite 2300
    Houston, TX 77002

    David N. Karpel
    Department of Justice
    Criminal Division, Gang Unit
    950 Pennsylvania Avenue NW
    Washington, DC 20530

FOR THE DEFENDANT TERRY ROSS BLAKE:

    Gus A. Saper
    Mallett Saper Berg, LLP
    4306 Yoakum Boulevard
    Suite 400
    Houston, TX 77002-2911

FOR THE DEFENDANT LARRY MAX BRYAN:

    James Stafford
    Attorney at Law
    515 Caroline Street
    Houston, TX 77002

FOR THE DEFENDANT JAMES LAWRENCE BURNS:

    Lee Harper Wilson
    Attorney at Law
    PO Box 52447
    Houston, TX 77052-2447

1    A P P E A R A N C E S:  (Continued)

2    FOR THE DEFENDANT REBECCA JOHNSON CROPP:

3         Richard B. Kuniansky
          Kuniansky and Associates
4         440 Louisiana
          Suite 200
5         Houston, TX 77002

6

     FOR THE DEFENDANT BEN CHRISTIAN DILLON:

7

8         R. Christopher Goldsmith
          Attorney at Law
          440 Louisiana
9         Suite 900
          Houston, TX 77002

10

11   FOR THE DEFENDANT RUSTY EUGENE DUKE:

12        Robert Alton Jones
          Attorney at Law
13        2211 Norfolk
          Suite 600
14        Houston, TX 77098

15

     FOR THE DEFENDANT KELLY RAY ELLEY:

16

17        Wendell A. Odom, Jr.
          Neal Davis , III
          Law Offices of Wendell Odom & Neal Davis, III
18        440 Louisiana
          Suite 200
19        Houston, TX 77002

20

     FOR THE DEFENDANT DESTINY NICOLE FEATHERS:

21

22        David William Kiatta
          Attorney at Law
          77 Sugar Creek Center Boulevard
23        Suite 565
          Sugar Land, TX 77478
24                                - - - - -

25

```
1    A P P E A R A N C E S:  (Continued)

2    FOR THE DEFENDANT CHAD RAY FOLMSBEE:

3         Mark Anthony Diaz
          Attorney at Law
4         3935 N Main
          Houston, TX 77009
5

6    FOR THE DEFENDANT SAMANTHA DEANN GOLDMAN:

7         Miguel Andres Sanchez-Ross
          Foreman Degeurin Degeurin
8         300 Main Street
          3rd Floor
9         Houston, TX 77002

10

11   FOR THE DEFENDANT KENNETH MICHAEL HANCOCK:

12        Nicole DeBorde
          Attorney at Law
13        712 Main Street
          24th Floor
14        Houston, TX 77002

15   FOR THE DEFENDANT DUSTIN LEE HARRIS:

16        Grant M. Scheiner
          Attorney at Law
17        2211 Norfolk Street
          Suite 735
18        Houston, TX 77098-4062

19

20   FOR THE DEFENDANT CLAY JARRAD KIRKLAND:

21        Brett A. Podolsky
          Attorney at Law
22        917 Franklin Street
          Suite 510
23        Houston, TX 77002        - - - - -

24

25
```

1    A P P E A R A N C E S:  (Continued)

2    FOR THE DEFENDANT MICHAEL RICHARD LAMPHERE:

3        Michael M. Essmyer, Sr.
         Essmyer & Danile, PC
4        5111 Center Street
         Houston, TX 77007
5
         R. Trent Gaither
6        Law Office of Trent Gaither
         5111 Center Street
7        Houston, TX 77007

8
     FOR THE DEFENDANT JAMIE GRANT LOVEALL:
9
         John M. Parras
10       Attorney at Law
         1018 Preston
11       Floor 2
         Houston, TX 77002
12
         Kurt Budd Wentz
13       Attorney at Law
         5629 Cypress Creek Parkway
14       Suite 115
         Houston, TX 77069
15
16   FOR THE DEFENDANT WILLIAM DAVID MAYNARD:

17       Edward A. Mallett
         Mallett Saper Berg, LLP
18       Campanile South
         4306 Yoakum Boulevard
19       Suite 400
         Houston, TX 77006
20
21   FOR THE DEFENDANT SHANE GAIL McNIEL:

22       John Riley Friesell
         Attorney at Law
23       The Niels Esperson Building
         808 Travis Street
24       24th Floor
         Houston, TX 77002
25                            - - - - -

1  A P P E A R A N C E S:  (Continued)

2  FOR THE DEFENDANT GLEN RAY MILLICAN, JR.:

3       Thomas Brent Mayr
        Law Office of Brent Mayr, PC
4       4101 Washington Avenue
        2nd Floor
5       Houston, TX 77007

6

7  FOR THE DEFENDANT CHRISTOPHER JAMES MORRIS:

8       Joe A. Salinas, III
        Attorney at Law
        PO Box 1305
9       Houston, TX 77251-1305

10

11 FOR THE DEFENDANT STEPHEN TOBIN MULLEN:

12      Louis A. Latimer
        Daniel, Williams and Associates, PLLC
13      405 Main Street
        Suite 455
        Houston, TX 77002
14

15 FOR THE DEFENDANT JUSTIN CHRISTOPHER NORTHRUP:

16      Feroz Farook Merchant
        Attorney at Law
17      4119 Montrose Boulevard
        Suite 200
18      Houston, TX 77006

19

20 FOR THE DEFENDANT RONALD LEE PRINCE:

21      Robert Eric Reed
        Reed Law Firm
        402 Main
22      Suite 3 South
        Houston, TX 77002
23                        - - - - -

24

25

1   A P P E A R A N C E S:   (Continued)

2   FOR THE DEFENDANT CHARLES LEE ROBERTS:

3          Thomas B. Dupont, II
           Dupont and Dupont
4          8100 Washington Avenue
           Suite 250
5          Houston, TX 77007

6

    FOR THE DEFENDANT DAVID ORLANDO ROBERTS:

7

           Thomas D. Moran
8          Schneider McKinney, PC
           440 Louisiana
9          Suite 800
           Houston, TX 77002

10

11  FOR THE DEFENDANT BILLY DON SEAY:

12         Sue Jana
           Attorney at Law
13         6750 West Loop South
           Suite 120
14         Bellaire, TX 77401

15

    FOR THE DEFENDANT JAMES ERIK SHARRON:

16

           Kenneth W. McGuire
17         McGuire Law Firm
           P.O. Box 79535
18         Houston, TX 77279

19         Ali R. Fazel
           Scardino Fazel
20         1004 Congress
           Third Floor
21         Houston, TX 77002            - - - - -

22

23

24

25

1    A P P E A R A N C E S:  (Continued)

2    FOR THE DEFENDANT SAMMY KEITH SHIPMAN:

3         Donald Leroy Lambright
          Attorney at Law
4         440 Louisiana
          Suite 200
5         Houston, TX 77002

6         Winifred Akins Pastorini
          Attorney at Law
7         440 Louisiana
          Suite 800
8         Houston, TX 77002

9

10   FOR THE DEFENDANT BRIAN LEE THOMAS:

11        Gerald E. Bourque
          Attorney at Law
12        24 Waterway Avenue
          Suite 660
13        The Woodlands, TX 77380

14        Robert A. Morrow, III
          Robert Morrow
15        24 Waterway Avenue
          Suite 660
16        The Woodlands, TX 77380

17   FOR THE DEFENDANT FREDRICK MICHAL VILLARREAL:

18        Thomas Allan Martin
          Attorney at Law
19        1018 Preston
          Suite 500
20        Houston, TX 77002-1824

21

22   FOR THE DEFENDANT TAMMY MELISSA WALL:

23        Lance Craig Hamm  (On Speakerphone)
          Attorney at Law
24        1200 Rothwell Street
          Houston, TX 77002
                            - - - - -
25

1   A P P E A R A N C E S:  (Continued)

2

    FOR THE DEFENDANT STEVEN WORTHEY:
3
          Mervyn Milton Mosbacker, Jr.
4         Attorney at Law
          2777 Allen Parkway
5         Suite 1000
          Houston, TX 77019
6
          Lourdes Rodriguez
7         Attorney at Law
          300 Fannin Street
8         Suite 220
          Houston, TX 77002-2038
9

10  OFFICIAL COURT REPORTER:

11        Cheryll K. Barron, CSR, CM, FCRR
          U.S. District Court
12        515 Rusk Street
          Houston, TX  77002
13

14  Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription.
15                          - - - - -

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  First with the government.  This is United

3    States versus Terry Glenn Sillers, Criminal Action H12-272.

4    Who is here for the United States?

5          MR. HILEMAN:  Good afternoon, your Honor.  Jay Hileman

6    and Dave Karpel for the United States.

7          THE COURT:  All right.  As I call each defendant,

8    please stand up and tell me that you are here and who you are.

9               Terry Ross Blake?

10         MR. SAPER:  Gus Saper for Mr. Blake, your Honor.

11         THE COURT:  Larry Max Bryan?

12         MR. STAFFORD:  James Stafford, your Honor.

13         THE COURT:  James Lawrence Burns?

14         MR. WILSON:  Lee Wilson for Mr. Burns, your Honor.

15         THE COURT:  Pardon me?

16         MR. WILSON:  Lee Wilson for Mr. Burns.

17         THE COURT:  Rebecca Johnson Cropp?

18         MR. KUNIANSKY:  Richard Kuniansky on behalf of

19   Ms. Cropp.

20         THE COURT:  Mr. Dillon is going to plead.

21              Is your attorney here?

22         MR. GOLDSMITH:  Yes, sir.  Chris Goldsmith for

23   Mr. Dillon.

24         THE COURT:  Rusty Duke?

25         MR. JONES:  Good afternoon, your Honor.  Robert Jones

```
1    for Mr. Rusty Duke.
2             THE COURT:  Kelly Ray -- "Elley"?
3             MR. ODOM:  Wendell Odom and Neal Davis for Mr. Elley.
4             THE COURT:  Thank you.
5                 Destiny Nicole Feathers?
6             MR. KIATTA:  (Indicating)
7             THE COURT:  Okay.  David Kiatta?  Okay.
8                 Chad Folmsbee?
9             MR. DIAZ:  "Folmsbee."  Mark Diaz, your Honor.
10            THE COURT:  Thank you.
11                Samantha Deann Goldman?
12            MR. SANCHEZ:  Andres Sanchez, your Honor.
13            THE COURT:  Kenneth Michael Hancock?
14            MS. DeBORDE:  Good afternoon.  Nicole DeBorde.
15            THE COURT:  Dustin Lee Harris?
16            MR. SCHEINER:  Grant Scheiner for Mr. Harris, your
17   Honor.
18            THE COURT:  Benjamin Troy Johnson?
19      (No response)
20            THE COURT:  Clay Jarrad Kirkland?
21            MR. PODOLSKY:  Brett Podolsky for Mr. Kirkland.
22            THE COURT:  Thank you.
23                Michael Richard Lamphere?
24            MR. ESSMYER:  Mike Essmyer and Trent Gaither for
25   Mr. Lamphere, your Honor.
```

1      THE COURT:  Thank you.

2            Jamie Grant Loveall?

3      MR. WENTZ:  Kurt Wentz and John Parras for

4  Mr. Loveall.

5      THE COURT:  William David Maynard?

6      MR. MALLETT:  Edward Mallett, your Honor.

7      THE COURT:  Shane Gail McNiel?

8      MR. FRIESELL:  John Friesell for Mr. McNiel.

9      THE COURT:  James Marshall Meldrum?

10            He's going to plead, and Mr. Ely asked to be

11  excused.

12            Glen Ray Millican?

13      MR. MAYR:  Brent Mayr, your Honor.

14      THE COURT:  Christopher James Morris?

15      MR. SALINAS:  Joe Salinas for Mr. Morris, your Honor.

16      THE COURT:  Stephen Tobin Mullen?

17      MR. LATIMER:  Louis Latimer for Mr. Mullen.

18      THE COURT:  Justin Christopher Northrup?

19      MR. MERCHANT:  Feroz Merchant for Mr. Northrup.

20      THE COURT:  Thank you.

21            Ronald Lee Prince?

22      MR. REED:  Good afternoon, your Honor.  Eric Reed for

23  Mr. Prince.

24      THE COURT:  Charles Lee Roberts?

25      MR. DUPONT:  Good afternoon, your Honor.  Todd Dupont

1   for Mr. Roberts.

2            THE COURT:  David Orlando Roberts?

3            MR. MORAN:  Tom Moran for Mr. Roberts, your Honor.

4            THE COURT:  Billy Don Seay?

5            MS. JANA:  Sue Jana for Mr. Seay.

6            THE COURT:  James Erik Sharron?

7            MR. FAZEL:  Good afternoon, your Honor.  Ali Fazel and

8   Ken McGuire.

9            THE COURT:  Sammy Keith Shipman?

10           MR. LAMBRIGHT:  Don Lambright and Wendy Pastorini,

11  Judge.

12           THE COURT:  Brian Lee Thomas?

13           MR. BOURQUE:  Gerald Bourque and Robert Morrow.

14           THE COURT:  Frederick Michal Villarreal?

15           MR. MARTIN:  Tom Martin for Mr. Villarreal.

16           THE COURT:  Billy Franklin Weatherred?

17       *(No response)*

18           THE CLERK OF COURT:  Getting her on the phone now.

19           THE COURT:  No.  Turn that off.

20               Billy Franklin Weatherred?

21       *(No response)*

22           THE COURT:  Tammy Melissa Wall?

23               Ms. Wall, I believe, is going to participate by

24  telephone.  We'll call her in a minute.

25               Steven Worthey?

1          MR. MOSBACKER:  Mervyn Mosbacker and Lourdes Rodriguez

2     for Mr. Worthey.

3          THE COURT:  Okay.  We'll get Ms. Wall on the phone

4     now.

5              Thank you all for being here on short notice.

6     *(Clerk of court placing call)*

7          THE COURT:  Good afternoon.  This is Judge Lake.

8     Would you please identify yourself and your client for the

9     court reporter?

10          MR. HAMM:  This is Lance Hamm.  I represent Tammy

11     Wall.

12          THE COURT:  Thank you.

13              Before we proceed, the government's papers say

14     that there are 10 defendants who face capital charges.  I wish

15     the prosecutor would go down the list and identify which

16     defendants face capital charges, because I don't have an

17     accurate handle on that.

18          MR. KARPEL:  Yes, your Honor.

19          THE COURT:  Just in order.

20          MR. KARPEL:  Yes, your Honor.  Larry Max Bryant, Kelly

21     Ray Elley --

22          THE COURT:  What's -- Kelly Ray Elley?

23          MR. KARPEL:  Yes, your Honor.

24              Michael Richard Lamphere.

25          THE COURT:  What number is he?

1          Sixteen.  Okay.  All right.

2          MR. KARPEL:  Jamie Grant Loveall, William David

3    Maynard, Charles -- I'm sorry -- David Orlando Roberts, James

4    Erik Sharron, Sammy Keith Shipman, Bryan Lee Thomas, Steven

5    Worthey.

6          THE COURT:  Say again.

7          MR. KARPEL:  Steven Worthey.

8          THE COURT:  All right.  Thank you.

9          I declared this as a complex case, as you all

10   know.  There appear to be -- one motion under Docket Entry 267

11   is a defendants' motion to amend scheduling order filed by a

12   number of counsel.  And, then, the order granting the

13   government's request to declare this as a complex case

14   indicated that a revised scheduling order will be entered.

15          I've read the government's proposed scheduling

16   order; and I've read the suggested scheduling order, which

17   appears to be agreed to by all defendants except Ms. Cropp and

18   Billy Don Seay.  But then Mr. Seay agrees with the government's

19   scheduling order, which is more liberal to the government than

20   the defense proposed scheduling order.  So I'm not sure that

21   anybody but Mr. Kuniansky's client opposes the defense proposed

22   scheduling order.

23          I have not tried a capital case.  I've looked at

24   a number of scheduling orders entered by other judges in

25   capital cases.  Is the scheduling order suggested by the

1  defendant consistent with the norm in these cases?

2  　　　　MR. KARPEL:  It actually is, Judge.  It's not off the

3  mark, especially given the amount of discovery that we've

4  produced.

5  　　　　THE COURT:  Okay.  Other than Mr. Kuniansky, I take it

6  that everybody is satisfied with this order?  If you're not,

7  raise your hand or speak up if you're here by telephone.

8  　　　　　　All right.  I want -- yes?

9  　　　　MR. HAMM:  Yes.

10  　　　　THE COURT:  Okay.  Thank you.

11  　　　　I'm going to make two minor changes.  The status

12  conference will be held on September 20th at 2:00 p.m.

13  　　　　I've got an order, Charles.

14  　　　　And the status conference will be held on

15  November 20th at 2:00 p.m.

16  　　　　Now, do we need some interim deadlines, like we

17  normally have in a criminal case, for filing of motions, things

18  like that?  Or should we just wait until the September status

19  conference?

20  　　　　I would like the assistance of this wealth of

21  talent that's before me.

22  　　　　MR. FAZEL:  If it pleases the Court, Ali Fazel.

23  　　　　Your Honor, what we thought would be better is if

24  you could wait till September, only so that we can have -- we

25  have been delivered discovery.  I think there's a second batch

1    of discovery coming to us.  And there's also the budgeting

2    process for a lot of us.  Even some of those who are not death

3    eligible might need a budget when it comes to discovery or

4    experts.

5              And I thought maybe if we could go through the

6    budget process first, achieve that, get it before the Court,

7    get the Court to approve it, and get it up onto the Circuit if

8    necessary.  After that, if the Court wants to discuss motions,

9    we probably would have a more educated better idea of when we

10   could get those to the Court, that are not boilerplate, once

11   we've had -- at least had a chance to look at discovery.

12        THE COURT:  You mentioned the Circuit.  The Circuit

13   has been very involved as of late in budgetary issues dealing

14   with experts and appointed counsel.  Are you suggesting we

15   should get the Circuit involved in the preliminary budget

16   analysis?

17        MR. FAZEL:  No.  No.  And if I said that, I retract

18   it.  Not at all.  I just want to get the budget to the Court,

19   especially the death budget.

20              The folks that -- we've e-mailed with -- we've

21   tried to be as coordinated as possible.  We e-mailed with

22   everybody, and we suggested that everybody should put a budget

23   together for the Court.  I think life would be much simpler

24   that way.  The Court would have an idea how much money we're

25   talking about.

1          THE COURT:  It would.  And that way, I could have one

2     meeting to discuss the issues.

3              As some of you know who submitted ex parte

4     requests, I've been skeptical about some of the information

5     submitted.  And you need to tell me why you need 400 hours for

6     various activities, for example.

7          MR. FAZEL:  Yes, sir.

8          THE COURT:  Not you.  "You" in general.

9          MR. FAZEL:  Yes.

10         THE COURT:  And why the rate that is suggested is

11    reasonable.

12             So no later than 60 days you should submit to the

13    Court a budget.  And I would like it to be -- I don't know if

14    it can be a joint document; but to the extent you can

15    coordinate as much as possible, that would be very helpful.

16         MR. KARPEL:  Perhaps on the discovery part, we could

17    coordinate -- if there's any kind of copying, anything like

18    that, that everybody needs, maybe we could have one joint

19    discovery type budget to the Court.

20             As far as the death eligible people, obviously,

21    their budgets have to be independent, I think, according to the

22    statute.  And then, as far as the other folks that are not

23    death eligible, what I am concerned about is I'm afraid the

24    Court might get a litany of motions for investigators and so

25    forth.  And I'm not sure if we can conjoin those together.

1   They're going to have to be separate investigators.

2           THE COURT:  There could be several investigators, but

3   we don't need 33 investigators.  We could have a few who are

4   familiar with the case, I think, and could go investigate,

5   interview people; or do you think that would be a conflict?

6           MR. HAMM:  Judge, I think the problem -- I think the

7   problem that the -- only having a certain amount of

8   investigators may pose is it would technically be privileged

9   information that your investigator was receiving with respect

10  to your client.  And depending on how the information came out,

11  it may hurt other -- other defendants or -- you know, you never

12  know how it's all going to come out.

13          THE COURT:  I think that's a good point.

14          MR. HAMM:  I think that that may be why -- I can

15  barely hear the counsel who are speaking on it; but I think

16  that may be a concern for everybody, to have somewhat of an

17  independent investigator for --

18          THE COURT:  Okay.

19          MR. HAMM:  -- if we feel like we need it.

20          THE COURT:  All right.  Then, I've -- the Docket Entry

21  267, the motion to amend scheduling order, is granted.  And I

22  have entered the suggested scheduling order.

23          I guess that just leaves Mr. Kuniansky's client

24  who, of course, as he represents her is innocent or has very

25  little culpability.

1     MR. KUNIANSKY:  You're very astute, your Honor.

2     THE COURT:  She's the only person in custody who was

3  not otherwise in custody.  Is that accurate?

4     MR. KUNIANSKY:  I leave that up to the government to

5  say who else was --

6     MR. HILEMAN:  That's not the case at all.  There were

7  a number of others that were arrested off the street.

8  Certainly not everyone was writted from a penal institution.

9  There were a number of others who are held only on this charge.

10    THE COURT:  Okay.  I looked at her presentence

11  investigation report and she's got a history of criminal

12  activity but she doesn't look like she's particularly

13  dangerous.

14          Why does she need to be in custody?

15    MR. HILEMAN:  Because the messages she relayed led to

16  the attempted assassination of a government informant in a

17  federal prison.  One of our witnesses was stabbed nine times

18  because she relayed the information that he was a cooperator to

19  another person that relayed it to an inmate.

20          We feel that the points Mr. Kuniansky is raising

21  are more appropriate to a detention hearing or an appeal of a

22  detention hearing and not necessarily the scheduling of this

23  trial, but we would be happy to go into that matter as in depth

24  as the Court would like to put forward our case that she should

25  be detained and tried with everyone else.

1         THE COURT:  Have you appealed the detention order?

2         MR. KUNIANSKY:  Judge, I've put in the motion.  I have

3    not been able to obtain the transcript.  I have requested it

4    about five times.  I've ordered it.  They keep on promising it.

5    And I can't really appeal it without providing you with the

6    transcript of the hearing she had in Fort Worth, but they have

7    assured me it will be here next week.  Of course, they assured

8    me it would be here this week.  But I definitely plan on

9    appealing to you the order of detention.

10         THE COURT:  How long will it -- if her case were

11   severed out, how long would the trial take?

12         MR. HILEMAN:  It would be shorter, obviously, for one

13   defendant; but it's not a huge shortcut, because this is a RICO

14   case and we're required to put on testimony that the ABT is a

15   criminal enterprise engaged in or affecting interstate

16   commerce.  And, of course, we could short circuit some of the

17   allegations in the indictment but not a lot.  There's still a

18   lot of the same evidence that would be introduced whether it

19   was one defendant or several.

20         THE COURT:  I'm going to leave your client subject to

21   the order until I've had a further opportunity to look at the

22   issues surrounding her.

23         MR. KUNIANSKY:  Thank you, Judge.  I anticipate in the

24   very near future filing an appeal of the detention.

25         THE COURT:  Okay.  We've got everybody here.  That's

 1    all I show on my list of things to take up.  Anybody else want
 2    to say anything while we've got this -- everybody here?
 3              Yes, Mr. Jones.
 4         MR. JONES:  Judge, Rusty Duke, he's only in custody as
 5    a result of these proceedings.  He was on supervised release on
 6    another federal case; and I don't believe there's any other
 7    case, other than maybe a misdemeanor DWI.  We don't have a copy
 8    of the transcript.  We have an order for one in order to appeal
 9    his detention hearing.
10              However, we were trying to look at the discovery,
11    to see if there was anything else that they had other than what
12    they included in the detention hearing, before we brought to
13    the Court's attention the possibility of appealing his
14    detention.
15         THE COURT:  Well, why don't you talk to Mr. Hileman,
16    find out what else they have about it -- against him?
17         MR. JONES:  I will.  Thank you.
18         MS. JANA:  And, your Honor, I'm here on behalf of
19    Mr. Seay; and he also is in custody only as a result of this
20    case.  I had -- I'll come up there.
21              I had filed an agreement with the government's
22    proposed scheduling order which my understanding was asking for
23    a trial date of October 15th.
24         THE COURT:  It asked for a trial date of October 15th
25    as to the non-capital defendants.  I haven't agreed to that

1  yet.  We have a status conference in September.  So I don't
2  know when the trial date is going to be.
3          MS. JANA:  I understand, your Honor.  I just wanted to
4  make it clear for the record that we had -- essentially was
5  asking for an October trial date.
6          THE COURT:  Well, I don't know what the trial date is
7  going to be yet.  Okay?
8          MS. JANA:  Your Honor --
9          THE COURT:  Yes?
10          MR. PARRAS:  Judge, John Parras for Mr. Loveall, on
11  his case.
12          I have a question -- or an issue about discovery
13  that I would like to bring to the Court's attention and just
14  let you know we may be coming back soon.  The discovery that we
15  were provided by the government was put on a hard drive, and I
16  think that we all have a common pool of discovery that comes
17  from that hard drive.  That hard drive has different types of
18  files on it.  Some of them are searchable, and some of them
19  aren't.
20          And what I would like to do is to ask the Court
21  if the Court could ask the government to provide us all of the
22  discovery in a searchable format so that we can save money and
23  we don't have to do that individually with our discovery
24  material.  Also, for the audio files, if there is transcripts
25  of those files, if those could be provided to us so that we

1    can --

2            THE COURT:  Well, have other defense counsel had

3    problems searching the drive that's been submitted?

4            MR. FAZEL:  If it pleases the Court, there are

5    multiple types of discovery.  And I think Mr. Parras is

6    referring to there are handwritten letters in the discovery.

7    And those, of course, are not OCR'd.  And what we have done is

8    attempted to -- Mr. McGuire has done is attempted to put what

9    was produced to us into a format where -- which is much easier

10   and simpler to search.

11           What Mr. Parras is suggesting to the Court, I

12   think -- and I think everybody would agree -- is, if the

13   government has these already done in a way where it's

14   searchable and they have transcripts, it would save the CJA a

15   tremendous amount of money, even if we pool it, if they could

16   just produce that to us.

17           THE COURT:  Do you have it in paper form?

18           MR. HILEMAN:  No.  We -- it's -- I mean, I'm sure it's

19   in paper form somewhere; but I have it in electronic form.

20   It's a different format than they have.

21           But I'd point out that we did -- we did our best

22   to make this a tool they could use.  We provided a pretty

23   detailed index, and there's a DOJ employee that -- this is his

24   full-time job of managing this discovery.  He's available at

25   all times for any questions or help.  I mean, we've set up a

1    help desk.

2                    I know people had trouble accessing it at first.

3    Some people may have had trouble with a password or something.

4    But this fellow in DC, Mr. Harry Valcourt, has been available

5    to help index and research at any time.  I wasn't aware of

6    any --

7                    THE COURT:  Mr. Parras, have you tried to contact this

8    fellow in Washington?

9                    MR. PARRAS:  We contacted him initially to access the

10   drive.  Since then, I have not.  My only concern, Judge, is, to

11   the extent he's a Department of Justice employee, when I call

12   him, asking him to help me look for this particular material or

13   that particular material, he'll have an idea of my defense

14   strategy, what it is that I am doing.  Now -- so that's one

15   concern.

16                   We're asking for a pool of usable information

17   or -- or more easily usable information.  I've looked into the

18   cost of hiring an expert, digital forensic expert, to help us

19   convert this material into a more easily usable format; and

20   it's astro- -- it's a high cost, Judge.  If we were to share

21   the cost, that would help, as defense attorneys.

22                   But as a preliminary matter, I think -- I'm

23   asking the Court, if the government can produce us the

24   information in a format they already have, that's more useful

25   to us, we would appreciate the Court's assistance --

1          THE COURT:  Well, have you talked to Mr. Hileman about
2     this?
3          MR. PARRAS:  No, I have not.  I bring that up because
4     you asked if there were any other issues and --
5          THE COURT:  Well, I think you need to have a
6     face-to-face discussion with the government before you get me
7     involved, because you may be able to work it out.
8          MR. PARRAS:  I'll do so, Judge.
9          THE COURT:  I certainly think it makes sense to have a
10    joint effort insofar as making it searchable and having maybe
11    one library that everybody can search.  But I would assume
12    that -- in this day and age, that defense counsel do that
13    anyway, don't they, in multiple defendant cases?
14         MR. McGUIRE:  Judge, we've already done that.  We've
15    had discussions among defense counsel.  We have a large
16    percentage of it -- about 15,000 separate documents, pages -- a
17    large percentage of it, maybe 80 to 90 percent, is already
18    searchable.
19              I wanted to let the Court know we've talked among
20    defense counsel that we're going to try to put together one
21    estimate for producing that to all counsel who want it.  We've
22    already got a -- document production people who are lined up to
23    do that.  And I think everyone is in agreement we're going to
24    try to do that and send one order to the Court for getting
25    electronic and paper copies for those who want it.

1          It doesn't address Mr. Parras' point, which is
2    that there's a lot of stuff in there, handwritten letters, that
3    are not going to be searchable with the technology we have.
4    So -- but --
5          THE COURT:  Well, can't you search -- you can't put a
6    word search in there?
7          MR. McGUIRE:  For the typewritten texts, like offense
8    reports, autopsy reports, transcripts, or wire intercepts,
9    Judge, yes.  That's already searchable.  But there's a whole
10   bunch of handwritten letters that were intercepted in jail, and
11   the technology we have cannot pick that up.
12         THE COURT:  Are the handwritten letters indexed by
13   author or name or something, or does it just say "handwritten
14   letter"?
15         MR. McGUIRE:  I think they are indexed in the index,
16   Judge.
17         MR. KARPEL:  They are indexed, your Honor, and that
18   index is searchable.  And this hard drive that we provided with
19   all defense counsel is not just documents.  It includes videos,
20   audios, T3.  So everything is consolidated on one hard drive,
21   which we believe is easily accessible.
22              But the -- the index is there and you can search
23   it and you can find by title, I think, what you are looking
24   for.
25         THE COURT:  Well, has this person in Washington, who

1    is here to help, has he or she had a tutorial -- or made or

2    been available to provide a tutorial for the defense counsel?

3    Maybe that would help.

4          MR. KARPEL:  We can certainly do that.  I asked him

5    before I came here today what kind of problems, if any, he was

6    getting, or complaints; and he said relatively few.  The only

7    calls he got was early on to help some of the defense counsel

8    access the database because it's password protected.  But he

9    has really not gotten any calls from anybody save that one

10   issue.

11         MR. FAZEL:  Your Honor, may it please the Court, I

12   think the issue is twofold.  Number one -- and we will

13   certainly talk to the government perhaps before we come to the

14   Court with a written motion of some sort.  I think what

15   Mr. Parras was trying to impart to the Court was, if they have

16   it already OCR'd so that it's searchable, it would seem like it

17   would be something that they could produce to us as well so

18   that we don't have to spend the money on OCR'ing it.  And I

19   think that's all it is.  And we'll talk to the government and

20   then perhaps come to the Court if we can't come to a resolution

21   on it.

22         THE COURT:  Okay.  I don't have anything in court this

23   afternoon.  Why don't you just visit with the government now?

24         MR. FAZEL:  Yes.  Yes, I'll do that, Judge.

25         THE COURT:  We've got everybody here.

1      MR. McGUIRE:  That's a good idea.

2      THE COURT:  Okay.  I'll see you-all in September.

3  Thank you.

4      MR. FAZEL:  Judge, there's one other issue.

5      THE COURT:  Wait a minute.  Wait a minute.

6      MR. FAZEL:  One other issue with budgets on the death

7  folks, can we talk to the Court about that just real briefly

8  again?  And I -- give you an idea what we're thinking and make

9  sure we're on the same page with the Court.

10      THE COURT:  Okay.  Be seated, please.  Mr. --

11      MR. FAZEL:  Do you want us to approach or just from

12  right here?

13      THE COURT:  You just want the death counsel?

14      MR. FAZEL:  Yes, your Honor.

15      THE COURT:  Well, the other lawyers may need to stay

16  and talk to the government.

17      MR. FAZEL:  Okay.  We had a meeting with death counsel

18  about our budget, and our thinking was in 60 days we're going

19  to present you with one budget.  The budget is going to be all

20  inclusive, what we expect it's going to cost to run the case

21  from beginning to end, including all experts and everything in

22  there.  Is that okay with the Court, just one budget from

23  beginning to end if no other issues?

24      THE COURT:  You're going to have interim payments, I

25  assume.

1          MR. FAZEL:  Yes, sir, that will be included in that.

2          THE COURT:  Okay.

3          MR. FAZEL:  Okay.

4          THE COURT:  All right.

5          MR. DUPONT:  Your Honor, this is Todd Dupont.

6          For those not on the death side of the case, do

7  you want us to bill you quarterly or interim payments monthly

8  for the CJA federal --

9          THE COURT:  I certainly don't want them monthly.

10         MR. DUPONT:  I understand.  A lot of people probably

11  have that question.

12         THE COURT:  I want -- quarterly would be preferrable.

13         MR. DUPONT:  Okay.

14         THE COURT:  Do you submit these directly to the

15  clerk's office for review?  Is that how we've been doing it?

16         MR. FAZEL:  Yes, sir.

17         THE COURT:  Because I see some of these.  The clerk's

18  office tries to get them to me as soon as they've reviewed

19  them, and I don't let them sit on my desk for more than a day.

20  But they tell me that the delay is getting the lawyers to

21  submit them in proper form to the clerk's office.  So I would

22  suggest that the end of March you submit one, end of June you

23  submit one.  And I'll rule on them as quickly as I can.

24         MR. DUPONT:  Thank you, your Honor.

25         THE COURT:  Thank you.  Have a good weekend.

1    *(End of requested proceedings)*

2                        * * * * *

3                  COURT REPORTER'S CERTIFICATION

4        I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled cause.
5
Date:   January 22, 2015
6
                              /s/   Cheryll K. Barron
7                         _____
                          Cheryll K. Barron, CSR, CMR, FCRR
8                         Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25